The next case is Tracy Gribble v. Department of Veterans Affairs, 2023-2066. Mr. Watts. Good morning. May it please the Court, Gregory Watts on behalf of Petitioner. The arbitration award resulted in improper time-served suspension lacking an articulated, reasoned analysis of the actual length of the suspension. So she could have been reinstated if she'd just finished her work with a program, a rehab program, right? No, that's incorrect. There were several issues regarding reinstatement. And two of them were this ordered, mandated, random, continuous drug testing, and along with the... She wasn't denied compensation for that. The reason she was denied compensation is that the arbitrator's award set up to the date of the arbitrator's decision. You say it should have been a later date when she was actually reinstated, correct? Correct. It should be the date of reinstatement. It shouldn't be dependent on administrative whims or how long the process... And the government's argument in response to that is that she should have finished her rehab program and she would have been reinstated, so it was entirely in her control as to whether she was reinstated and she didn't do what she needed to do. Right. I mean, that's what they're saying, isn't it? I'll let the government speak for themselves, but if Your Honor is referring to the Employee Assistance Program, the EAP, she was enrolled in a program and I believe one of the other terms of the arbitration award not at issue in this petition was to provide a certificate of completion. Okay, but she didn't do that apparently, right? As of right now, I don't know if she has submitted that. I know it... It was in her control to finish the rehab program and she would have been reinstated. It was in her control to finish a rehab program, correct, but it's not in her control whether counsel asked for extensions to brief, whether the arbitrator got his award out to the parties a month earlier or later. And this squares with the court's holdings in cases such as Green Street and Sohota and Borza, which is non-presidential, that suspension links can't be tied to these arbitrary administrative events or how long it takes the arbitrator or the arbitration process to proceed. And there's clearly no analysis, a reasoned analysis to support what would be the actual suspension links here. I guess, let me take a crack at it. I guess the question is, let's assume after the arbitration decision was issued, I think in 2023, Ms. Gribble took all actions to get reinstated. How long would that reinstatement process take? I need to provide evidence that I completed a rehab program. I need to provide some updated certifications. I need to provide some other paperwork. I assume the reinstatement wouldn't have taken six months or something like that? Well, I think Your Honor has identified a core problem with this. There's no way of knowing. It could take six months. I'm just asking you, do you know? I don't. The problem with allowing this type of time-served suspension to stand is that Let's not call it time-served suspension because that's already making the conclusion because I think it's debatable whether it's a time-served suspension. Just leaving the question of reinstatement being kind of open-ended in terms of how much time it takes. I think that's your concern. Well, when the arbitrator reduced the back pay and tied it to the date of the award, that reduces or removes the incentive for the government to swiftly reinstate a petitioner because they're not accruing any back pay, whether it's the government's fault in extending the reinstatement or petitioners. Well, suppose it's petitioners' fault. Suppose she delays for a year in completing her rehab program. So you're saying that because of that delay, she's entitled to additional back pay up to the date of reinstatement, even though the delay in reinstatement is entirely her fault. What I'm saying is that No, no answer. Is that correct? No. No? Why not? Because the time of the suspension should not be dependent on these administrative actions. It's a question of her action. In my hypothetical, I'm saying she waits a year to complete the rehab program and says I'm entitled to back pay for that year where the delay was entirely caused by my actions and not completing my rehab program. And you're saying under those circumstances, she would still get back pay up to the date of reinstatement, correct? She should, yes. And that would, perhaps if the court were to remand that, perhaps that would be something for the arbitrator to consider. But the court's been clear that it has to be a reasoned analysis for the actual length of the suspension, and that's not in this decision. Did she, in fact, complete a rehab program? I don't know the exact. I don't think there's any evidence in the record to that. That's correct. And this was part of the discussions to attempt to implement the award post-award. You know, what we had to provide, we did have medical documentation to provide the agency. Of course, there were the other two issues regarding the drug testing and the forced waiver from medical issues that were also preventing reinstatement. I guess I'm wondering why hasn't there been any certificate of completion of a rehab program that got submitted? The parties were attempting to resolve all total issues regarding the arbitration award. Implementation and reinstatement wouldn't have been possible, even with that certificate in this case, because there would have been these issues with the waiver of medical information. Is there any statute or regulation or binding precedent that says that an arbitrator's decision, when the arbitrator is granting back pay, it has to be from the period of end of suspension up through the time of reinstatement, as opposed to ending at the time of the arbitrator's decision issuing? I'm not aware of any statutory authority for that specific point, but I would say that this Court's decisions in cases such as Green Street and Sohota, or even going back to the Court of Claims' decision in Quifo. That's about the time served problem, right? Yes, and our position is that when the arbitrator created this reduction in back pay in Sohota, this Court found that a reduction in back pay has to be supported by a reasoned analysis if it's part of the penalty. I guess what I'm wondering is, on the day the arbitrator's decision came out, if Ms. Gribble had put in all the paperwork to get reinstated, then there really wouldn't be a cutoff in terms of the amount of back pay. She would get reinstated virtually the same day as the date of the arbitration decision, right? If I understand your hypothetical, you're saying the same day the arbitration award was issued that she was reinstated? Well, she turns in all the paperwork that the arbitrator required. Okay. That would still not cure the issue because she would remain unpaid effectively on suspension if she were reinstated. She could take her actions, but she can't guarantee that the agency takes the appropriate actions to effect reinstatement as well. Is there an opportunity to request reconsideration or request clarification of an arbitration decision? That would be a possibility, but from the start, it was clear to both parties that the back pay was mitigated as a form of the penalty. There was never clarification on the actual substance of the award. It was more of a disagreement, and the parties did discuss or attempted to discuss resolving those issues, but unfortunately were not able to reach an agreement. I'm confused as to what, if any, relationship there is between these other provisions of the award that you find objectionable and the back pay. In other words, the documentation and the random drug testing. What does that have to do with the back pay? I mean, I understand you say those provisions should not be in the award. We should set them aside. I understand that, but what's the relationship between those issues and the back pay, if any? There's not a direct relation to back pay, but to the extent they prevented implementation of the award, that would increase the length of the suspension. Your theory is that she could rely on these conditions of the award as delaying her back pay somehow? I'm not following. Not specifically delaying her back pay, but we view this as improper, illegal provisions that should not be implemented. Once implemented, especially the nature of this prospective unlimited random drug testing and the private medical information that could be obtained, especially if we're waiting to get to what Your Honor may be saying, is if implementation occurred and then whether going to the arbitrator before this court to try to resolve those issues, again, that would be additional time of harm for Petitioner here. For the medical information and continuing random drug testing, those are essentially changing the terms and conditions of employment for Petitioner. That's improper, and again, the parties attempted to resolve it. Why is it improper since what the arbitrator seems to be doing is mitigating the penalty that the government requested by saying, well, I'm not going to order, I'm not going to affirm termination, I'm going to impose conditions that are short of termination that will help resolve this problem for the future. What's the matter with that? Well, mitigating the back pay is the first issue with that. No, no, but I'm not talking about the back pay. I'm talking about the other conditions. In terms of the random drug testing? Yeah, and the documentation. I mean, yes, the government didn't argue those things to the arbitrator, but why doesn't the arbitrator have authority to come up with a penalty, if you will, or a requirement that's short of termination to resolve the matter? The arbitrator does have the authority to mitigate. However, the drug testing and medical information aspects are beyond the scope of authority. Why? Because those are not the issues presented to the arbitrator. It's not an appropriate remedial... I guess the concern is that the issue that was given to the arbitrator is what is the proper remedy? And remedy, I think, has a broader meaning than just confining the arbitrator to deciding whether there should be a termination or just a suspension or a reprimand. It can be something broader than that and can also include certain kinds of conditions. And these other items you're objecting to are within the memorandum of the VA, which provides for drug testing and sharing of information? Those are... Your Honor is correct. There is latitude providing remedies, and Your Honor is also correct. But if referring to, for instance, the employee assistance program, that's voluntary. It's voluntary to sign up for that, and I believe that... She did sign up for it, right? You're correct. She did sign... She signed the EAP, and that would subject her to a year of random drug testing, and medical information would only be accessible to those with a need to know, and it would only say that she was in the program and not release confidential medical information. None of those guardrails are present in the arbitrator's award, and it's not... What may happen 5, 10 years in the future, and I hope this doesn't after reinstatement, should she have a similar issue, that the government, the prying eyes of a hostile manager, could then seek that information, which would have nothing to do to this acute event that happened in this disciplinary arbitration. This was a disciplinary arbitration. The content of the drug policy or any other medical information not presented as a mitigating factor was not at issue, and it would have a chilling effect on federal employees when they're faced with discipline and they have medical information that could be mitigating. They may not want to present that for fear that it turns their medical... future medical history into an open book for management. Do you want to save some rebuttal time? Yes, I would like to. Thank you. We'll give you three minutes. Ms. Fleming. Good morning, Your Honors. May it please the Court? Ms. Quribble is asking the Court today to remand because the arbitrator declined to craft some novel prospective award of back pay extended into the indefinite future instead of making a decision based upon the facts. Do you know if it's standard practice for arbitrator decisions when they award back pay for the back pay to end at the time of reinstatement versus the time of the arbitrator's decision? I'm not aware of any observation by a court that that is standard practice, and the petitioner has not offered that kind of evidence. Right. Now I'm asking you, though. And I'm not aware of any such default position, and certainly it isn't in the cases that were discussed in the briefing. What I can say first is that the petitioner's argument on suspension is misplaced because, of course, this is not a time-served suspension. It is a definite period of 90 days. The arbitrator extensively discussed the facts supporting its decision to mitigate removal to suspension, and the 90 days was within the penalty period provided for this offense for the agency. But by limiting back pay to when the arbitrator's decision ends as opposed to until the time of reinstatement, it does negatively impact the incentive for the person to appeal the arbitrator's decision, right? I would disagree, Your Honor, first because I would say the arbitrator's opinion awarded all of the back pay that the facts before him supported. That is, as the court has pointed out, it is unclear at the time of the arbitrator's award how long it would take for the conditions to be complied with, and it was worthwhile to suggest that should she be entitled for additional back pay after the award and before her reinstatement, she could always go back to the arbitrator, and then the arbitrator could decide, was it in fact Ms. Gribble who delayed her reinstatement? Should she be entitled for back pay for the period of time in which she delayed the reinstatement? Those are questions that the arbitrator could not have answered at the time of award. So I wouldn't say that this is a penalty or provides some sort of chilling effect on appeal. It simply delayed the resolution of whatever additional back pay might have been awarded once the conditions for reinstatement were satisfied. Should she get back pay if, let's say, she completed the rehab program, submitted the paperwork, and the agency delayed for two months in reinstating her, should she get back pay for that two-month period? While that would certainly be something the arbitrator would have to consider if it were up to me, Your Honor, I would say she should get back pay for that two-month period. In addition, the plaintiff has argued, or excuse me, the petitioner has argued that reinstatement is somehow not a cure, and instead reinstatement could have been a cure. As the court pointed out in its questioning, Ms. Gribble could have complied with all the conditions on the day of the arbitrator's award, which would have eliminated any necessity of returning back to the arbitrator to complete an additional back pay award. She testified before the arbitrator that she had begun a program of drug rehabilitation back in 2014, in January of 2014. So it certainly is within the realms of possibility that she could have completed in the year and a half between the beginning of that program and the time the arbitrator made its decision in 2023. She could have submitted that paperwork immediately. Likewise, she could have submitted paperwork on her licensing, on the medical release that was required and allowed under the EAP program, and that would have allowed her to return. And the agency was prepared to engage in that immediately after the arbitrator's award. So there's this paragraph six of the award, which seems to be awfully broad in terms of accessing information relating to her health situation. Maybe the part requiring information pertaining to her substance abuse treatment is understandable, but anything having to do with depression and anxiety-related care seems to be perhaps overly broad. I can understand why you would come to that conclusion, Judge Dyke. But in this case, Ms. Gribble expressly argued both before the agency and before the arbitrator that the reason why she had engaged in drug use, at least on this one occasion, is that she had for 10 years suffered from anxiety and depression, and that that condition directly affected how she interacted with her colleagues and patients in the workplace. So there was already evidence on the record that this was part of the offense that she was committing, and it was connected to the duties that she had before the agency. And so in that case, it makes sense. Also, the EAP program, which, again, she had agreed to comply with, allows not only this waiver, or requires, rather, a waiver for drug treatment services be submitted, but you can also, under the EAP program, require what's called psychobehavioral social records, medical records. So in other words, her anxiety and depression records could have been required under an EAP program as well. So the arbitrator didn't simply arbitrarily impose that condition, but rather, looking closely at the EAP program, authorized the release, specifically because this was a condition that she argued was affecting her work, and that the EAP program allowed the agency to get access to those records. In terms of the scope of number six, do you think it covers just a current day request for medical information related to her depression and anxiety-related care, or do you think this is future-looking as well? In 2030, the VA could request, okay, give me more updates on your medical care in 2035 and 2040, et cetera. What's the right way to read number six? I think it is limited to current or former caregivers. It's not clear in the terms that that means no future treatment records could be released, but I think if you look at the context within which this condition was imposed, which is how the EAP program requires the release of medical records, there's actually a form that you have to submit. The form doesn't authorize future medical releases forever. It's a limited waiver of confidentiality, and it goes only to specific people within the agency. There are a lot of protections for the employee. That's Health Form 10-5345, and you can see that on the record at page 430. So it's actually a much narrower release than the language might suggest and consistent with what the EAP program requires. It does seem clear that what the arbitrator was trying to do was provide some creative, holistic solution inspired by the Employee Assistance Program to try to bring Ms. Ripple back into the office but at the same time improve the overall workplace environment for her and for others. Yes, your honor. But thinking about the random drug testing, the EAP says, you know, when someone is going through EAP for drug use, the random drug testing ends after one year. Here it seems to be an unlimited period of time, and so the question is, why did the arbitrator choose to go with this unlimited period of time? Well, the issue with the EAP program is that it does only authorize that random drug testing for one year, I would agree. It doesn't say it's limited to one year, so I think there's an option even under EAP to extend that, though not expressly authorized in the rules. However, even in this case, there are reasons discussed by the arbitrator in his decision that warrant something longer than simply the one-year period that EAP requires, and that is that Ms. Ripple expressly told the arbitrator in the hearing that she had been suffering from this problem for 10 years. It's the depression, not the drug use. It's the depression, not the drug use. Correct. She didn't admit more than one instance of drug use, but she said the drug use was used to treat her anxiety and depression. So I do think you can reasonably infer that perhaps, perhaps it was not the only instance, but regardless, the best way to bridge the gap between the agency's desire for removal and insurance that this problem that she's confessed to is not going to continue to affect her work is to perhaps provide a longer period of drug testing than EAP's default setting, and that's what happened here. Now, Ms. Ripple has relied on several cases, and just briefly, the easiest way to put those cases in context is to understand that in each such case, and here I'm talking about Green Street, Forza, Cejota, the time served or arbitrary part of the penalty was, in fact, something that had already been decided by the arbitrator at the time of his decision. So in Cejota, for instance, the arbitrator had decided to exclude from back pay the three-year period in which the union was waiting to speak a date for the arbitration. That had already occurred. This wasn't a future-looking back pay situation. Likewise, in Green Street, the time served suspension was effectively because of the way that they worded the suspension timeline to allow it to continue through the date of the award. Here, the back pay is actually set to the time of the award. It's definite. The suspension is 90 days. That's undisputed, that there was a 90-day suspension. So any additional back pay that they might seek would have to similarly be decided by an arbitrator in the future. But the award as captured in this case is clearly different from the much less definite penalties in those cases. The underlying issue in this case is really, the fundamental question is, what is the scope of the arbitrator's authority to fashion a remedy? I mean, yes, in one sense, it was a broadly defined issue. What is an appropriate remedy? But at the same time, we could all imagine certain solutions that are just too onerous or far afield that they make no sense. And we would have to intervene. And I guess this wasn't really briefed at all or well briefed, but how would you understand the definition of what is the scope of what an arbitrator can do under these circumstances? Well, I think the scope of the arbitrator's authority is similar to that of the MSPB, certainly. The MSPB, for instance, in other cases where there was a single drug offense, had authorized removal. So clearly, the suspension of 90 days is within that period. But I don't think the board could have the authority to replace a removal with all of these EAP-inspired conditions, right? I think the board would have to remand that back. I think that there— Nobody asked for it, right? Your side certainly didn't, and nor did Ms. Gribble's side. Well, I would agree that Ms. Gribble has not briefed any objection. And in fact, for two of the conditions that were included— I guess my point is you wouldn't—you're not trying to suggest that the arbitrator's scope of authority to fashion a remedy is limited to what the MSPB could do under similar circumstances if it was brought to the board. No, Your Honor. I think it's limited by the collective bargaining agreement. And the collective bargaining agreement required an issue and the scope be defined by the parties, and they did that. And they didn't choose to make it more narrow than it was, and it was quite broad. So in this case, the arbitrator did have, I think, the authority to be creative and find a way for Ms. Gribble to be reinstated, which is what she wanted. But what if the arbitrator said, you know, I really think the way to solve depression is through exercise, and so now she has to document that she exercises 45 minutes every single day of the week, and that we need a certification of that, a signed witness document to that effect. I don't think, you know, you would expect us to affirm that. I wouldn't, Your Honor, and one of the reasons is there's nothing in the record linking exercise to depression. That's quite different here where there's clearly a foundation in the record for the EAP program that the arbitrator has tried to draw from into his condition. So this is something that looking at all the facts before the arbitrator is reasonable, and I think that's the lens through which you should view what he required them to do. The court has no other questions. Thank you for your time. Thank you, counsel. Mr. Watts, you have up to three minutes if you need them. Thank you, Your Honor. To address a few issues, speaking of the paragraph 6 of the award, relating, well, actually 6 and 7, any medical information or any drug test that was germane to the arbitrator making a reasoned analysis, whether termination was appropriate, was already in the record. There's no need for this prospective, future-looking, or even, you know, past-looking remedy. It's beyond the issue presented to the arbitrator. The mere mention or reference of a piece of evidence or mitigating factor does not then open the door to having an employee's future medical records be available for management personnel or human resources personnel, whomever. There's no limitations in the arbitrator's award, and we can't assume that the release that would be signed would be this form agency references. There's no mention of any form in the arbitrator's award. This is a serious issue, and it's a bridge too far, and when Your Honor's looking for where do we draw the line on what an arbitrator can remedy, here's where we draw the line. The drug policy, their content or application of the EAP or the drug policy or, you know, the Privacy Act or any other of these things that protect medical information, those were not issues for the arbitrator. This is a disciplinary case at its core, and the remedy must address that discipline. Looking to, you know, 5, 10, 20 years after reinstatement, her current or former caregivers could still be providing care for different issues then, and under this award, the agency would have authority to look at that information, and there's no limit on who can look at it and what kind of information. Presumably, they could receive a whole medical file on these issues, and that's simply an untenable position. And regarding the issue of the 90 days and what was appropriate, the court must focus on not just a label that the arbitrator put, but what was actually done in the award. It's similar to Cejota. The arbitrator did say a 10-day suspension and then reduced the back pay because the union or employee didn't, you know, pursue this grievance timely, even if, for sake of argument here, it was the union or petitioner who didn't pursue her case or reinstatement timely. That's still not enough to satisfy an articulated reasoned analysis for the actual length of the suspension, which keeps growing. And if there's no further questions, that's all. Thank you. Thank you, counsel. The case is submitted.